IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIRGILIO HERRERA REYES, | : | |
| | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | No. 13-CV-06439 |
| v. | : | |
| | : | |
| ALEJANDRO MAYORKAS et al., | : | |
| | : | |
| Respondents. | : | |

MCHUGH, J.                                                                                          NOVEMBER 4, 2014

### MEMORANDUM

This is an immigration matter brought by an alien who was granted, and currently maintains, lawful permanent resident status within the United States, and now seeks citizenship. Petitioner Virgilio Reyes has been denied naturalization by both an immigration judge and U.S. Citizenship and Immigration Services (USCIS).[1]  He challenges that denial, asserting that he is entitled to naturalization because he has possessed lawful permanent resident status for the requisite period of time.  The government responds that because he was, in the first instance, not eligible for lawful permanent resident status when he applied, he is also ineligible for naturalization.  The matter is before me on a motion for summary judgment, and I am constrained by controlling precedent to rule that the unlawful means by which Mr. Reyes obtained permanent resident status undercuts his quest for citizenship.

---

[1] Mr. Reyes is not at risk of removal from the United States.

I. **Factual Background**

Petitioner's Answers to Requests for Admissions establish the essential facts. Mr. Reyes illegally entered the United States and was apprehended by Border Patrol agents in 1989. He was released from custody, pending further proceedings. A deportation proceeding was held *in absentia* and a deportation order was issued. Reyes claims he did not know of this proceeding or the order. His date of entry was March 7, 1989, and the order of deportation was issued May 31, 1989. In December 1989, he married an American citizen. Mr. Reyes remained in the U.S. until 1992, when he departed voluntarily. In October 1992, he applied for lawful permanent resident status, which was granted. He did not mention his prior deportation in his registration, purportedly because he was unaware of it. He returned to the United States in 1992, and has lived here continuously except for periodic trips back to the Dominican Republic. In October 2012, he applied for naturalization, but was denied by both an immigration judge and USCIS.

Reyes has sought review in this Court, which reviews the matter *de novo*. As the Petitioner notes, his lawful permanent resident status was granted in 1992, which was prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1997.[2]

II. **Summary Judgment as the Means of Resolution**

A threshold question is whether the *de novo* nature of this Court's review requires a hearing or trial. I conclude that it is proper to address this issue within the context of a motion for summary judgment. See Chan v. Gantner, 464 F.3d 289, 295-96 (2d Cir. 2006) (rejecting an argument that §1421(c) "implies a bench trial or evidentiary hearing" and thus precludes motions for summary judgment as a vehicle to obtain review of a denial decision); Abulkhair v. Bush,

---

[2] The IIRIRA created more stringent criteria for determining which aliens are inadmissible for the purposes of permanent residence.

413 Fed. App'x 502, 508 n.4 (3d Cir. 2011) (no requirement that the court hold oral argument before deciding a motion for summary judgment on review of denial of naturalization).

### III. The Requirement that an Alien be "Lawfully Admitted for Permanent Residence" before Naturalization

An alien becomes eligible for naturalization after five years of continuous residence following lawful admission as a permanent resident. 8 U.S.C. § 1427(a). However, in a section of the Immigration and Naturalization Act (INA) entitled "Prerequisite to Naturalization," Congress provided as follows: "[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter. The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States." 8 U.S.C. § 1429. Because the statute explicitly requires an alien to bear the burden of showing that he or she was lawfully admitted as a permanent resident, "doubts should be resolved in favor of the United States and against the claimant." Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967).

The INA further defines the governing standard: "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws…" 8 U.S.C. § 1101(a)(20) (unchanged at time of Petitioner's application for lawful permanent resident status). The seemingly redundant wording of Section 1429—"in accordance with all applicable provisions of [the Act]"—is meant to be "emphatic and embracive." In re Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983).

Under the statutory scheme, one can have the legal **status** of Lawful Permanent Resident (LPR), even if he was not, as factual matter, "lawfully admitted as a permanent resident." "[A]n

3

alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been 'lawfully admitted for permanent residence' because the 'alien is deemed, *ab initio*, never to have obtained lawful permanent resident status.'" De La Rosa v. DHS, 489 F.3d 551, 554 (2d Cir. 2007).

As a result, in cases where the validity of LPR status is controlling, courts have not hesitated to evaluate whether the resident alien was actually eligible, as a factual matter, to be granted such status initially. As stated in one frequently cited decision of the Board of Immigration Appeals, in cases involving fraud, even where an alien is "facially and procedurally in lawful permanent resident status for more than the requisite number of years, he was never, in a legal sense, an alien 'lawfully admitted for permanent residence,' because his acquisition of that status was procured by fraud." In re Koloamatangi, 23 I. & N. Dec. 548, 548-49, 2003 WL 77728 (BIA 2003); see Gallimore v. Att'y Gen., 619 F.3d 216, 223 (3d Cir. 2010) (quoting In re Koloamatangi); Adegoke v. Fitzgerald, 784 F. Supp. 2d 538, 541 (E.D. Pa. 2011) ("Having misrepresented his immigration history in order to obtain his LPR status, Adegoke's LPR status is void *ab initio*. Adegoke was thus never 'lawfully admitted for permanent residence,' and is ineligible for naturalization.").

A number of circuits have expanded this line of reasoning beyond cases where LPR status was obtained through fraud.[3] This trend was recognized by the Third Circuit, which

---

[3] Cases extending this reasoning to other substantive legal defects that prevent one from being "lawfully admitted for permanent residence" include: Shin v. Holder, 607 F.3d 1213 (9th Cir. 2010) (petitioner was not lawfully admitted for permanent residence even though proper procedure had been followed and the petitioner was unaware of the underlying fraud); Walker v. Holder, 589 F.3d 12 (1st Cir. 2009) (petitioner was not lawfully admitted to the United States as a permanent resident because his LPR status was acquired through the fraud or misrepresentation of third parties); De La Rosa v. DHS, 489 F.3d 551 (2d Cir. 2007) (per curiam) (court held "that an alien is only 'lawfully admitted for permanent residence' for purposes of the INA if his or her adjustment to lawful permanent resident complied with substantive legal requirements"); Savoury v. Att'y Gen., 449 F.3d 1307 (11th Cir. 2006) (petitioner was granted LPR even though the authorities were aware of a criminal conviction that should have made

4

concluded that "[w]here an alien obtains LPR status through administrative oversight—despite being ineligible for that status for one reason or another, . . . the alien has not been 'lawfully admitted for permanent residence.'" Gallimore, 619 F.3d at 223-24.  In Gallimore, the court could "discern no principled distinction between (1) finding a status adjustment not 'lawful' because the applicant procured it through fraud; and (2) finding a status adjustment not 'lawful' because the applicant was not legally entitled to it for any other reason." Id. at 224.

With the exception of Longstaff, petitioners in the cases above sought relief from deportation for which lawful admission to permanent residence was a condition-precedent to cancellation of deportation under 8 U.S.C. § 1229b(a).  None of these cases address naturalization proceedings such as this one.  However, "lawful admission for permanent residence" is a statutorily-mandated condition-precedent to naturalization eligibility as well, and there does not appear, nor has the Petitioner offered, any reason that might suggest the phrase should be interpreted differently for these purposes.  All of these courts were interpreting the meaning of the phrase "lawfully admitted for permanent residence" as used within the INA.  De La Rosa, 489 F.3d at 554; 8 U.S.C. § 1101(a)(20); see also 8 C.F.R. § 1.1(p).

Accordingly, I conclude that Mr. Reyes must show that he was legally entitled to LPR status under substantive principles of law as a prerequisite to naturalization.

---

him ineligible, but for purposes of removal hearing, he was deemed not to have been "lawfully admitted for permanent residence"); Arellano-Garcia v. Gonzales, 429 F.3d 1183 (8th Cir. 2005) (petitioner "may have received the adjustment through lawful procedure, and thus he reaped the benefits of permanent residence status until the mistake was discovered, but we defer to the BIA's reasoned statutory interpretation and conclusion that he never 'lawfully' acquired the status through that mistake."); Monet v. INS, 791 F.2d 752 (9th Cir. 1986) (concluding that petitioner's prior conviction would have rendered him ineligible for adjustment to LPR at the time his status was adjusted, and thus that he had not been "lawfully admitted" to the United States); In re Longstaff, 716 F.2d 1439 (5th Cir. 1983) (where a petitioner made a mistake in applying for permanent residence status and would not have been eligible for LPR if the application had been correct, he was not lawfully admitted for the purposes of naturalization).

**IV.     The Effect of Petitioner's Departure from the United States on his Status**

The time relevant to this inquiry is 1992, when the Petitioner applied for his LPR status. 8 U.S.C. § 1182 has, at all times relevant to this petition, specified that aliens who have been arrested and deported, and who then seek admission to the United States within 5 years of such deportation, are excludable.  See 8 U.S.C. § 1182(a)(6)(B) (1994); 8 U.S.C. § 1182(a)(17) (1988).  While the formatting of the statutes changed between the two editions, the relevant content did not.

It is conceded that Mr. Reyes entered the United States illegally and was arrested by Border Patrol.  It is also undisputed that a deportation proceeding was held *in absentia* and an order of deportation was issued.  The issue is whether Petitioner's contention that he was unaware of the deportation order makes a difference.  Statutorily, it does not.  As provided by the governing law at the time: "For the purposes of this chapter any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." 8 U.S.C. § 1101(g).  The Supreme Court has held that "[d]eportation orders are self-executing orders, not dependent upon judicial enforcement." Stone v. INS, 514 U.S. 386, 398 (1995).  In Mansour v. Gonzales, 470 F.3d 1194 (6th Cir. 2006), the court held that a petitioner who had an outstanding deportation order against him had effectively executed that deportation order when he had drunkenly, but voluntarily, crossed the border into Mexico.  When Mr. Reyes left the United States in 1992, he was, by operation of law, executing the order of deportation.  Consequently, the one fact in dispute—whether Mr. Reyes was aware of the deportation proceeding and order—is legally immaterial.

6

Counsel for Mr. Reyes argues with admirable conviction that there are due process concerns raised in circumstances such as this.  I am sensitive to those concerns, but looking at the record objectively, Petitioner certainly knew that he had entered the United States illegally, knew that he was detained for a violation of American law, and knew that he faced a proceeding to deport him.  Significantly, there is nothing in the record to suggest that Mr. Reyes had a substantive defense to his deportation that could have been successfully raised at the hearing.  These factors ameliorate any potential unfairness that may accompany Petitioner's purported lack of notice of the underlying deportation order.

V.     **The Necessity of Waiver by the Attorney General for Aliens Previously Deported**

Having been deported by operation of law, the only means by which Petitioner could have secured LPR status was through a waiver.  As provided by statute, those who re-enter within five years after being deported are excluded unless "the Attorney General has consented to [the alien's] applying or reapplying for admission."  8 U.S.C. § 1182(a)(6)(B) (1994); 8 U.S.C. § 1182(a)(17) (1988).  Such a waiver, commonly known as a I-212 waiver, is discretionary and requires application by the alien.  The government asserts that the facts of this case conclusively establish that no waiver was sought by Petitioner.  Mr. Reyes presents no evidence of ever having sought a waiver, and it is his burden to show that he is lawfully admitted.  8 U.S.C. § 1429.  In requests for admission, Petitioner denies knowledge of a deportation proceeding and order (Ex. 1 & 2, ¶ 7), and denies any knowledge of the requirement to file a waiver (Id. at ¶ 9).  This lack of knowledge is confirmed by Mr. Reyes' deposition testimony.  Necessarily, no waiver could have been sought where Petitioner claims not to have known of the deportation or the waiver requirement.[4]

---

[4] My ruling does not address, and is in no way contingent upon, the government's assertion in proceedings before the USCIS that Mr. Reyes engaged in fraud by failing to disclose the deportation order.

7

Without the waiver, Petitioner could not have been lawfully admitted for permanent residence in light of his prior deportation, and is ineligible for naturalization.

## VI.     *Nunc Pro Tunc* Relief

Petitioner's brief mentions the possibility of *nunc pro tunc* relief in which the court could allow Petitioner to reapply for admission.[5] However, the cases cited apply only to deportation hearings, not naturalization hearings. See Matter of Ducret, 15 I. & N. Dec. 620, 1976 WL 32342 (BIA 1976) ("We thus set forth two situations in which an immigration judge has the power **in deportation proceedings** to grant an alien's application for permission to reapply for admission: (1) where the only ground of deportability would be eliminated; and (2) where the alien would receive a grant of adjustment of status in conjunction with the grant of any appropriate waivers of inadmissibility.") (emphasis added).

Based on case law, it appears as though courts may approve *nunc pro tunc* relief where there is clear error on the part of the agency, though the Board of Immigration Appeals (BIA) may have greater discretion. See Patel v. Gonzales, 432 F.3d 685, 693 (6th Cir. 2005). My concern here, which I raised with counsel at oral argument, is whether authorizing reapplication to seek a waiver would open the issue of Mr. Reyes' status globally, particularly now that he is divorced, and potentially threaten his ability to remain in the United States.

---

[5] Retroactive relief, often referred to as *nunc pro tunc* relief, has "long [been] employed by the immigration authorities, based on what they believe to be implied statutory authority to provide relief from the harsh provisions of the immigration laws in sympathetic cases." See Gonzalez–Balderas v. Holder, 597 F.3d 869, 870 (7th Cir. 2010) (citing Patel v. Gonzales, 432 F.3d 685, 693 (6th Cir. 2005), and Edwards v. INS, 393 F.3d 299, 308–09 (2d Cir. 2004)). But the BIA has generally limited the grant of orders *nunc pro tunc* to a few limited circumstances. It appears to have granted such retroactive relief only to permit the exercise of discretion to allow an alien to reapply for admission, to apply the law as it existed when the alien violated the immigration laws, Ramirez-Canales, 517 F.3d 904, 910 (6th Cir. 2008), or to correct an error in immigration proceedings, Edwards, 393 F.3d at 309.

Cheruku v. Attorney Gen. of U.S., 662 F.3d 198, 208 (3d Cir. 2011).

This is an unfortunate case. Petitioner has been in the United States since 1992. He has five children who are citizens. Since 1989, when charges of drug possession against him were dismissed, he has had no contact with the criminal justice system. When he was interviewed in furtherance of his naturalization petition, he disclosed his illegal entry and arrest. The government's position is legally correct, but the cost of Petitioner's unlawful entry is steep. During a conference following oral argument, the Court spoke of the possibility of an agreement between Petitioner and the government that would allow him to seek a waiver from the Attorney General without risk of deportation. While the Court cannot compel the government to take such action, and will enter the Order to which the United States is entitled, I renew my suggestion that the government consider such an agreement under the circumstances in this case.

    /s/ Gerald Austin McHugh
United States District Court Judge